B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>James Berman, Chapter 7 Trustee | DEFENDANTS<br>Michael Malley, Michael S. Goldberg,<br>and Michael S. Goldberg, LLC |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Jeffrey Hellman<br>Zeisler & Zeisler, P.C.<br>558 Clinton Avenue, Bridgeport, CT  06605 | ATTORNEYS (If Known) |
| PARTY (Check One Box Only)<br>□ Debtor        □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor     □ Other<br>☒Trustee | PARTY (Check One Box Only)<br>□ Debtor        □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor     ☒ Other<br>□ Trustee |

CAUSE OF ACTION (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Avoidance of preferences, fraudulent transfers and claim disallowance. 11 U.S.C. 547, 548, 550, 551, Fed. R. Bankr.
P. 3007, and Uniform Fraudulent Transfer Act.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

| FRBP 7001(1) – Recovery of Money/Property | FRBP 7001(6) – Dischargeability (continued) |
|---|---|
| ☐ 11-Recovery of money/property - §542 turnover of property | ☐ 61-Dischargeability - §523(a)(5), domestic support |
| ☒ 12-Recovery of money/property - §547 preference | ☐ 68-Dischargeability - §523(a)(6), willful and malicious injury |
| ☒ 13-Recovery of money/property - §548 fraudulent transfer | ☐ 63-Dischargeability - §523(a)(8), student loan |
| ☒ 14-Recovery of money/property - other | ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation |
| | (other than domestic support) |
| FRBP 7001(2) – Validity, Priority or Extent of Lien | ☐ 65-Dischargeability - other |
| ☐ 21-Validity, priority or extent of lien or other interest in property | |
| | FRBP 7001(7) – Injunctive Relief |
| FRBP 7001(3) – Approval of Sale of Property | ☐ 71-Injunctive relief – imposition of stay |
| ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h) | ☐ 72-Injunctive relief – other |
| | |
| FRBP 7001(4) – Objection/Revocation of Discharge | FRBP 7001(8) Subordination of Claim or Interest |
| ☐ 41-Objection / revocation of discharge - §727(c),(d),(e) | ☐ 81-Subordination of claim or interest |
| | |
| FRBP 7001(5) – Revocation of Confirmation | FRBP 7001(9) Declaratory Judgment |
| ☐ 51-Revocation of confirmation | ☐ 91-Declaratory judgment |
| | |
| FRBP 7001(6) – Dischargeability | FRBP 7001(10) Determination of Removed Action |
| ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims | ☐ 01-Determination of removed claim or cause |
| ☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, | Other |
| actual fraud | ☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq. |
| ☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny | ☐ 02-Other (e.g. other actions that would have been brought in state court |
| (continued next column) | if unrelated to bankruptcy case) |

| ☒Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $  572,540.00 |

Other Relief Sought

Prejudgment remedy as to certain defendants

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Michael S. Goldberg, LLC & Michael S. Goldberg | BANKRUPTCY CASE NO.<br>09-23370 (Lead), 09-23371 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Connecticut | DIVISION OFFICE<br>Hartford | NAME OF JUDGE<br>Dabrowsky, USBJ |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>Jeffrey Hellman, Counsel to James Berman, Trustee | | |
| DATE<br>July 23, 2010 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Jeffrey Hellman | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION**

| | |
|---|---|
| In re: | ) Chapter 7 |
| | ) |
| | ) |
| | ) |
| MICHAEL S. GOLDBERG, LLC | ) Case No. 09-23370 (ASD) |
| MICHAEL S. GOLDBERG | )           09-23371 (ASD) |
| Debtors. | ) Jointly Administered Under |
| | Case No. 09-23370 |
| JAMES BERMAN, Chapter 7 Trustee for | ) |
| | ) |
| MICHAEL S. GOLDBERG, LLC, and | ) |
| MICHAEL S. GOLDBERG | ) |
| | ) |
| Plaintiff, | ) |
| | )   Adv. Pro. No. _____ |
| v. | ) |
| MICHAEL MALLEY, | ) |
| MICHAEL S. GOLDBERG and MICHAEL S. | ) |
| GOLDBERG, LLC | ) |

**COMPLAINT**

Plaintiff, James Berman, Chapter 7 Trustee (the "Trustee") for debtors Michael S.

Goldberg, LLC and Michael S. Goldberg alleges as follows:

**FACTUAL BACKGROUND AS TO ALL DEFENDANTS AND ALL COUNTS**

1.      This action seeks to recover over a million dollars of fictitious "profits"

and other payments to defendant in furtherance of a classic Ponzi Scheme (the

"Goldberg Scheme") [1]  conducted over the last 12 years by Michael S. Goldberg ("Mr. Goldberg") and his single-member limited liability company, Michael S. Goldberg, LLC ("Debtor LLC"), which at times used the d/b/a "Acquisitions Unlimited Group" and is sometimes (collectively referred to herein, along with Mr. Goldberg, as the "Debtors").

2.      The Goldberg Scheme promised (and, for a long time, paid) patently unbelievable rates of return of up to (and in some instances exceeding) twenty percent (20%) per quarter, in purportedly *risk-free* investments.

3.      Mr. Goldberg represented to investors that he and/or Debtor LLC were engaged in primarily two types of business deals that generated these fantastic returns. First, in the early years of the Goldberg Scheme (but continuing throughout), Mr. Goldberg represented that he could purchase diamonds, at extremely low wholesale prices, on the New York City diamond exchange and resell those diamonds for a profit

---

[1]  A Ponzi scheme is a fraudulent pyramid-type scheme named after Charles Ponzi. Cunningham v. Brown, 265 U.S. 1 (1924).In such a scheme, money from new investors is used to pay artificially high returns to earlier investors in order to create an appearance of profitability and attract new investors so as to perpetuate the scheme. See Bear Stearns Servs. Corp. v. Gredd., 397 B.R. 1, 8-10 (S.D.N.Y. 2007) (citing Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1088 n. 3 (2d Cir. 1995)); see, also  In re: Unified Commercial Capital Inc. 260 B.R. 343 (Bankr. W.D.N.Y. 2001) ("A Ponzi scheme, as that term is generally used, refers to an investment scheme in which returns to investors are not financed through the success of the underlying business venture, but are taken from principal sums of newly attracted investments. Typically, investors are promised larger returns for their investments. Initial investors are actually paid the promised returns, which attracts additional investors."). There is a general rule - known as the "Ponzi scheme presumption" - that such a scheme demonstrates fraudulent intent as matter of law because "transfers made in the course of a Ponzi scheme could have been made for no purpose other than to hinder, delay or defraud creditors." Bear Stearns v. Gredd., at 8-10.  See also Donnell v. Kowell, 533 F.2d 462, 770 (9th Cir. 2008), cert. den. 129 S.Ct. 640 (2008); SEC v. Resource Dev. Int'l, LLC, 487 F.3d 295, 304 (5th Cir. 2007); Armstrong v. Collins, 2010 Bankr. LEXIS 280 75*63 (S.D.N.Y. 2010).

**ZEISLER & ZEISLER, P.C.**  •  *ATTORNEYS AT LAW*
558 CLINTON AVENUE  •  P. O. BOX 3186  •  BRIDGEPORT, CONNECTICUT 06605-0186  •  (203) 368-4234  •  JURIS NO. 69625

sufficient to pay the investor-holders of these purported diamond liquidation contracts, a twenty percent (20%) rate of return every sixty (60) days (the "Diamond Liquidation Deals"). Moreover, the Diamond Liquidation Deals purported to grant investors a security interest in the diamonds supposedly purchased for re-sale.

4.     The second and more recent set of deals, involving significantly more funds, involved Mr. Goldberg's representations to potential investors that he was one of a handful of "preferred vendors" of Chase Manhattan Bank n/k/a JP Morgan Chase ("Chase"). Mr. Goldberg represented that he had a contractual right to purchase from Chase foreclosed business assets (such as structural steel, aluminum and other construction material) from a "Chase Foreclosure Manifest" at prices low enough to allow him to re-sell those assets (usually within ninety (90) days of purchase) to large institutions at profit margins of up to one hundred percent (100%) (the "Chase Asset Deals"). Mr. Goldberg represented to investors that his relationship with Chase was governed by a 1999 contract between Debtor LLC and Chase that had been updated from time-to-time (the "Chase Master Agreement").

5.     Mr. Goldberg represented to investors that the Chase Asset Deals involved pre-arranged sales to major public companies such as Bechtel Corporation, United Technologies, Bausch and Lomb, Swinerton Builders and others. In most instances, the Debtors' contracts with investors in the Chase Asset Deals ("Chase Contracts") provided a twenty percent (20%) rate of return per quarter.

**ZEISLER & ZEISLER, P.C.** • *ATTORNEYS AT LAW*
558 CLINTON AVENUE • P. O. BOX 3186 • BRIDGEPORT, CONNECTICUT 06605-0186 • (203) 368-4234 • JURIS NO. 69625

6.     In many of the Chase Contracts, Mr. Goldberg, and not the investor, was responsible for paying any income tax owed by the <u>investor</u> on the profits generated.

7.     Mr. Goldberg also represented to investors that the purported Chase Master Agreement contained a "Contract Dissolution Capital Protection Clause" which obligated Chase to refund the full amount of the purchase price if the Debtors were unable to re-sell the acquired assets to the expected ultimate buyer.

8.     Thus, many (but not all) of the investors in the Diamond Liquidation Contracts and the Chase Contracts were expecting to receive an annualized rate of return of over one-hundred percent (100%) on an after-tax basis, in virtually risk-free deals.

9.     In stark contrast to the more complex fraudulent schemes unmasked in the recent wave of high-profile Ponzi schemes such as those perpetrated by Bernard Madoff, Manhattan Investment Fund Limited, Allen Stanford, Scott Rothstein, Mark Dreier and the Bayou Fund (to name a few), the Goldberg Scheme did not involve <u>any</u> legitimate, actual business or investment activity by the Debtors.   All the funds used to pay investors came from other investors.

10.     Mr.   Goldberg has never been a licensed investment advisor.   Mr. Goldberg has no financial training and was employed on a full-time basis as a medical device sales representative.   In fact, on occasion, Mr. Goldberg would arrive at a meeting with an investor while he was still wearing medical "scrubs" from his real full-time job.   In most instances, the Diamond Liquidation Deals and Chase Asset Deals

ZEISLER & ZEISLER, P.C.   •   ATTORNEYS AT LAW
558 CLINTON AVENUE   •   P. O. BOX 3186   •   BRIDGEPORT, CONNECTICUT 06605-0186   •   (203) 368-4234   •   JURIS NO. 69625

(which were often in the hundreds of thousands, and sometimes millions, of dollars) were evidenced only by one or two page contracts that appear to have been drafted by a layperson.

11.     The Debtors' Diamond Liquidation Deals and Chase Asset Deals were a complete sham.  The Debtors never bought diamonds or foreclosed assets with investor funds or sold anything to the purported "buyers".   No "profits" or other income or proceeds were generated by any transactions involving the Debtors and all the funds received by investors went to either pay off other investors or for Mr. Goldberg's personal use or benefit.

12.     The Debtors' supposed ability to "flip" diamonds quickly for a huge profit and  unique relationship with Chase, as represented to investors, never existed and any such representations made to obtain investments in the Goldberg Scheme were designed, along with the sky-high rates of return, to induce investors to invest money in the fictitious Diamond Deals and the Chase Asset Deals.

13.     In short, the Goldberg Scheme was as purely illusory and uncomplicated as a Ponzi scheme can be.  Virtually *every* dollar of the millions paid to the defendants and other investors who received money from the Goldberg Scheme came from other investors' cash, the money often simply electronically changing hands between account holders in the same financial institutions (primarily Webster Bank and Bank of America) where Mr. Goldberg encouraged his investors to keep their accounts.

5

14.    As word of these fantastic returns on virtually risk-free investments spread in the closely knit community of South Glastonbury (where Mr. Goldberg resided) and throughout Hartford County, increasing numbers of investors wanted to invest in the Goldberg Scheme. More significantly, the Debtors, knowingly and unknowingly, began compensating individuals and companies who brought investors to the Goldberg Scheme and received a percentage of the investment dollars they arranged ("Feeders").

15.    This increased investment activity in the Goldberg Scheme (between the early 2000s and 2007) was in part because the Feeders had strong incentive to bring larger and larger deals to Goldberg because they were risking other people's money while "earning" a 2% to 5% interest rate participation in their investors' deals *plus*, in some instances, a finder's fee of up to ten percent (10%) on the investments made by their clients. The increased investments generated by the Feeders caused the size of the Goldberg Scheme to explode between 2007 and 2009, to involve over a hundred and thirty million dollars in transactions and resulted in hundreds of investors holding the bag for tens of millions in losses.

16.    In mid to late 2009, more and more major investors began demanding full payment on their investments, instead of "rolling them over". At this point, the Goldberg Scheme became more and more difficult to maintain. The Debtors began making later and later payments while they tried to find replacement investors to pay off those investors who were demanding money. These late payments, although not totally

6

uncommon, created increased concern among large investors who, for understandable reasons, feared the worst in terms of the <u>bona</u> <u>fides</u> of Mr. Goldberg's transactions. Accordingly, these large investors put Mr. Goldberg under further increased pressure and scrutiny.

17.     Ultimately, Mr. Goldberg was sued and his assets were frozen by a group of large investors whose investments with the Debtors were never returned when due. At this point, Mr. Goldberg turned himself in to federal authorities. At about the same time, those investors who had sued the Debtors for fraud joined together to commence the involuntary bankruptcies which resulted in the Trustee's appointment, and in which capacity he brings this action for the benefit of all creditors of the estate.

18.     On or about November 16, 2009, Mr. Goldberg admitted to federal law enforcement officials that the Debtors had paid off the investments of existing investors with funds obtained from new investors.

19.     On various occasions since the Trustee's appointment, Mr. Goldberg has admitted to the Trustee and his representatives that the Goldberg Scheme was a pure Ponzi scheme as described above, that no legitimate investment activity was engaged in by him or Debtor LLC, and that every dollar used to make profits and principal payments to investors for at least the last ten years of the Goldberg Scheme came from other investors' money and not from any legitimate business activity or investment.

**ZEISLER & ZEISLER, P.C.** • *ATTORNEYS AT LAW*
558 CLINTON AVENUE • P. O. BOX 3186 • BRIDGEPORT, CONNECTICUT 06605-0186 • (203) 368-4234 • JURIS NO. 69625

## Jurisdiction, Venue and Nature of this  Proceeding

20.     On November 18, 2009 (the "Petition Date"), certain petitioning creditors filed an involuntary petition for relief under Chapter 7 of the Bankruptcy Code against the Debtors.

21.     On November 24, 2009, the Court entered the Order for Relief in the Debtors' cases.

22.     By Orders dated January 11, 2010, the Court confirmed the election of James Berman as Chapter 7 Trustee in both cases.

23.     On February 26, 2010, this Court entered an order consolidating these cases for joint administration only.

24.     This Complaint initiates an adversary proceeding pursuant to §§ 544, 546, 547, 548, 550 and 551 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330 ("Bankruptcy Code"), and Federal Rule of Bankruptcy Procedure 7001(1).    The Complaint seeks (1) to avoid and recover for the benefit of the estates preferential transfers of the Debtors' property made to or for the benefit of the defendants on or within 90 days of the Petition Date; and (2) to avoid and recover intentional and constructive fraudulent transfers of the Debtors' property made to or for the benefit of the defendants.

25.     This Court has jurisdiction, under 28 U.S.C. §§ 157 and 1334(b), of the subject matter of this proceeding because the claims asserted herein arise under Chapter

8

7 of the Bankruptcy Code and are related to a case pending under the Bankruptcy Code

in the United States Bankruptcy Court for the District of Connecticut, Hartford Division

(the "Bankruptcy Court").

26.     This matter is a core proceeding pursuant to 28 U.S.C.

§§ 157(b)(2)(A),(B),(E), (F), (H) and (O).

27.     Pursuant to 28 U.S.C. § 1409(a), venue of this adversary proceeding in the

Bankruptcy Court is proper because the Debtors' cases are pending in this district and

division.

### Parties

28.     Trustee is the duly appointed Chapter 7 Trustee for the Debtors.

29.     Defendant, Mr. Goldberg, is an individual whose last known address was

35 Sunrise Terrace, Wethersfield, Connecticut.  Mr. Goldberg is the sole principal and

managing member of Debtor LLC.

30.     Defendant, Debtor LLC, is a Connecticut limited liability company having

a business address of 35 Sunrise Terrace, Wethersfield, Connecticut.

31.     Defendant, Michael Malley ("Malley"), is an individual who is domiciled

at 82 Flynn Lane, Middletown, Connecticut  06457.

32.     Malley was an investor in Debtor LLC and received payments from

Debtor LLC aggregating thousands of dollars in excess of the funds he invested.   Upon

**ZEISLER & ZEISLER, P.C.**  •  *ATTORNEYS AT LAW*
558 CLINTON AVENUE  •  P. O. BOX 3186  •  BRIDGEPORT, CONNECTICUT 06605-0186  •  (203) 368-4234  •  JURIS NO. 69625

information and belief, Malley was also a Feeder who participated in and furthered the

Goldberg Scheme by soliciting investors and/or investing other peoples' money in

exchange for a percentage of the return with and/or without these other investors'

knowledge.

33.     Between January 16, 2004 and November 4, 2009, Malley invested

approximately $105,000.00 in the Goldberg Scheme.  Between January 16, 2004 and

November 4, 2009, Malley received approximately $572,540.00 in transfers from the

Debtors.

**First Claim for Relief**
**(90-Day Preferential Transfers Against Malley)**
**11 U.S.C. §§ 547, 550(a), 550(c) and 551**

34.     Paragraphs 1-33 of this Complaint are repeated and re-alleged as if fully

set forth herein.

35.     The Debtors made the following transfer to Malley on or within 90 days of

the Petition Date:

| | DATE | AMOUNT |
|---|---|---|
| 1. | September 8, 2009 | $   33,500.00 |
| 2. | September 28, 2009 | 33,450.00 |
| 3. | October 26, 2009 | 36,000.00 |
| 4. | November 4, 2009 | 27,750.00 |
| | | $  130,700.00 |

**ZEISLER & ZEISLER, P.C.**  •  *ATTORNEYS AT LAW*
558 CLINTON AVENUE  •  P. O. BOX 3186  •  BRIDGEPORT, CONNECTICUT 06605-0186  •  (203) 368-4234  •  JURIS NO. 69625

(collectively, the "90 Day Preferential Transfers").

36.     The 90-Day Preferential Transfers were made on or within 90 days of the Petition Date.

37.     The 90-Day Preferential Transfers constitute transfers of the Debtors' interest in property.

38.     The 90-Day Preferential Transfers were for or on account of an antecedent debt owed to or for the benefit of Malley.

39.     The Debtors made the 90-Day Preferential Transfers while they were insolvent.

40.     The 90-Day Preferential Transfers enabled Malley to receive more than he would have received if (a) the Debtors' cases were cases under Chapter 7 of the Bankruptcy Code, (b) the 90 Day Preferential Transfers had not been made, and (c) Malley had received payment of such debts to the extent provided by the provisions of the Bankruptcy Code.

41.     The Trustee is entitled pursuant to Bankruptcy Code § 547 to avoid the 90-Day Preferential Transfers, and pursuant to Bankruptcy Code §§ 550(a), 550(c) and 551 to recover from Malley, for the benefit of the estate, the property transferred or the value of such property, plus interest.

ZEISLER & ZEISLER, P.C.  •  ATTORNEYS AT LAW
558 CLINTON AVENUE  •  P. O. BOX 3186  •  BRIDGEPORT, CONNECTICUT 06605-0186  •  (203) 368-4234  •  JURIS NO. 69625

## Second Claim for Relief
### (One Year Preferential Transfers Against Malley)
### 11 U.S.C. §§ 547, 550(a), 550(c) and 551

42.    Paragraphs 1-41 of this Complaint are repeated and re-alleged as if fully set forth herein.

43.    The Debtors made the following transfers to Malley within one year of the Petition Date:

|     | DATE | AMOUNT |
| --- | --- | --- |
| 1. | December 12, 2008 | $  17,800.00 |
| 2. | December 23, 2008 | 12,100.00 |
| 3. | January 30, 2009 | 27,350.00 |
| 4. | April 2, 2009 | 10,000.00 |
| 5. | April 10, 2009 | 27,200.00 |
| 6. | May 19, 2009 | 50,000.00 |
| 7. | June 15, 2009 | 30,800.00 |
| 8. | June 26, 2009 | 6,000.00 |
| 9. | July 15, 2009 | 5,000.00 |
| 10. | August 4, 2009 | 26,500.00 |
| 11. | September 8, 2009 | 33,500.00 |
| 12. | September 28, 2009 | 33,450.00 |
| 13. | October 26, 2009 | 36,000.00 |
| 14. | November 4, 2009 | 27,750.00 |
|     |     | $ 343,450.00 |

(collectively, the "Malley One-Year Transfers").

44.    The One-Year Preferential Transfers were made on or within one year of the Petition Date.

12

ZEISLER & ZEISLER, P.C.  •  ATTORNEYS AT LAW
558 CLINTON AVENUE  •  P. O. BOX 3186  •  BRIDGEPORT, CONNECTICUT 06605-0186  •  (203) 368-4234  •  JURIS NO. 69625

45.     The One-Year Preferential Transfers constitute transfers of the Debtors' interest in property.

46.     The One-Year Preferential Transfers were for or on account of an antecedent debt owed to or for the benefit of Malley.

47.     The Debtors made the One-Year Preferential Transfers while they were insolvent.

48.     Malley was an insider of the Debtors as that term is defined in 11 U.S.C. § 101(31).

49.     The One-Year Preferential Transfers enabled Malley to receive more than they would have received if (a) the Debtors' cases were cases under Chapter 7 of the Bankruptcy Code, (b) the One-Year Preferential Transfers had not been made, and (c) Malley had received payment of such debts to the extent provided by the provisions of the Bankruptcy Code.

50.     The Trustee is entitled, pursuant to Bankruptcy Code § 547, to avoid the One-Year Preferential Transfers and pursuant to Bankruptcy Code §§ 550(a), 550(c) and 551, to recover from Malley, for the benefit of the Estates, the property transferred or the value of such property, plus interest.

**ZEISLER & ZEISLER, P.C.** • *ATTORNEYS AT LAW*
558 CLINTON AVENUE • P. O. BOX 3186 • BRIDGEPORT, CONNECTICUT 06605-0186 • (203) 368-4234 • JURIS NO. 69625

**Third Claim for Relief**
**(Bankruptcy Code Intentional Fraudulent Transfer Against Malley and the Debtors)**
**11 U.S.C. §§ 548(a)(1)(A), 550(a) and 551**

51.    Paragraphs 1-50 of this Complaint are repeated and re-alleged as if fully set forth herein.

52.    The Debtors made the following transfers to Malley within two years of the Petition Date:

| | DATE | AMOUNT |
|---|---|---|
| 1. | January 17, 2008 | $  11,000.00 |
| 2. | February 20, 2008 | 7,200.00 |
| 3. | April 9, 2008 | 7,000.00 |
| 4. | April 22, 2008 | 20,000.00 |
| 5. | July 23, 2008 | 2,750.00 |
| 6. | August 26, 2008 | 25,000.00 |
| 7. | September 15, 2008 | 20,000.00 |
| 8. | October 27, 2008 | 50,000.00 |
| 9. | December 2, 2008 | 17,800.00 |
| 10. | December 23, 2008 | 12,100.00 |
| 11. | January 30, 2009 | 27,350.00 |
| 12. | April 2, 2009 | 10,000.00 |
| 13. | April 10, 2009 | 27,200.00 |
| 14. | May 19, 2009 | 50,000.00 |
| 15. | June 15, 2009 | 30,800.00 |
| 16. | June 26, 2009 | 6,000.00 |
| 17. | July 15, 2009 | 5,000.00 |
| 18. | August 4, 2009 | 26,500.00 |
| 19. | September 8, 2009 | 33,500.00 |
| 20. | September 28, 2009 | 33,450.00 |

14

| 21. | October 26, 2009 | 36,000.00 |
| 22. | November 4, 2009 | 27,750.00 |
| | | $ 486,400.00 |

(collectively, the "Malley Two-Year Transfers").

53.    The Malley Two-Year Transfers were made by Debtors with the actual intent to hinder, delay, and defraud some or all of Debtors' then existing and future creditors.

54.    The Malley Two-Year Transfers constitute fraudulent transfers avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and are recoverable from Malley pursuant to section 550(a) of the Bankruptcy Code.

55.    As a result of the foregoing, pursuant to sections 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code, the Trustee is entitled to a judgment: (a) avoiding and preserving the Malley Two-Year Transfers, (b) directing that the Malley Two-Year Transfers be set aside, (c) recovering the Malley Two-Year Transfers, or the value thereof, from Malley for the benefit of the Debtors' estates, and (d) an injunction against the Debtors, Malley prohibiting each of them from further disposing of the property transferred.

ZEISLER & ZEISLER, P.C.  •  ATTORNEYS AT LAW
558 CLINTON AVENUE  •  P. O. BOX 3186  •  BRIDGEPORT, CONNECTICUT 06605-0186  •  (203) 368-4234  •  JURIS NO. 69625

### Fourth Claim for Relief
**(Bankruptcy Code Constructive Fraudulent Transfers Against Malley and
the Debtors)
11 U.S.C. §§ 548(a)(1)(B), 550(a) and 551**

56.     Paragraphs 1-55 of this Complaint are repeated and re-alleged as if fully
set forth herein.

57.     The Malley Two-Year Transfers were made on or within two years before
the Filing Date.

58.     Debtors received less than reasonably equivalent value in exchange for
each of the Malley Two-Year Transfers.

59.     At the time of each of the Malley Two-Year Transfers, Debtors were
insolvent, or became insolvent as a result of the Two-Year Transfers in questions.

60.     At the time of each of the Malley Two-Year Transfers, the Debtors were
engaged in a business or a transaction, or were about to engage in a business or a
transaction, for which any property remaining with the Debtors was an unreasonably
small capital.

61.     At the time of each of the Malley Two-Year Transfers, Debtors intended
to incur, or believed that they would incur, debts that would be beyond their ability to
pay as such debts matured.

62.     The Malley Two-Year Transfers constitute constructively fraudulent
transfers avoidable by the Trustee pursuant to section 548(a)(1)(B) of the Bankruptcy

**ZEISLER & ZEISLER, P.C.** • *ATTORNEYS AT LAW*
558 CLINTON AVENUE  •  P. O. BOX 3186  •  BRIDGEPORT, CONNECTICUT 06605-0186  •  (203) 368-4234  •  JURIS NO. 69625

Code and are recoverable from Malley pursuant to section 550(a) of the Bankruptcy Code.

63.    As a result of the foregoing, pursuant to sections 548(a)(1)(B), 550(a), and 551 of the Bankruptcy Code, the Trustee is entitled to a judgment: (a) avoiding and preserving the Two-Year Transfers, (b) directing that the Malley Two-Year Transfers be set aside, and (c) recovering the Malley Two-Year Transfers, or the value thereof, from Malley for the benefit of the Debtors' estates, and (d) an injunction against the Debtors, Malley prohibiting him from further disposing of the property transferred.

### Fifth Claim for Relief
### (UFTA Intentional Fraudulent Transfer Against Malley and the Debtors)
### 11 U.S.C. § 544 (b)(1), Conn. Gen. Stat. § 52-552e(a)(1), 52-552h(a), 550(a) and 551

64.    Paragraphs 1-63 of this Complaint are repeated and re-alleged as if fully set forth herein.

65.    The Debtors made the following transfers to Malley within four years of the Petition Date:

| | DATE | AMOUNT |
|---|---|---|
| 1. | July 19, 2006 | $   25,000.00 |
| 2. | October 18, 2006 | 15,000.00 |
| 3. | April 17, 2007 | 15,000.00 |
| 4. | January 17, 2008 | 11,000.00 |
| 5. | February 20, 2008 | 7,200.00 |
| 6. | April 9, 2008 | 7,000.00 |

17

| 7.  | April 22, 2008      | 20,000.00  |
| 8.  | July 23, 2008       | 2,750.00   |
| 9.  | August 26, 2008     | 25,000.00  |
| 10. | September 15, 2008  | 20,000.00  |
| 11. | October 27, 2008    | 50,000.00  |
| 12. | December 2, 2008    | 17,800.00  |
| 13. | December 23, 2008   | 12,100.00  |
| 14. | January 30, 2009    | 27,350.00  |
| 15. | April 2, 2009       | 10,000.00  |
| 16. | April 10, 2009      | 27,200.00  |
| 17. | May 19, 2009        | 50,000.00  |
| 18. | June 15, 2009       | 30,800.00  |
| 19. | June 26, 2009       | 6,000.00   |
| 20. | July 15, 2009       | 5,000.00   |
| 21. | August 4, 2009      | 26,500.00  |
| 22. | September 8, 2009   | 33,500.00  |
| 23. | September 28, 2009  | 33,450.00  |
| 24. | October 26, 2009    | 36,000.00  |
| 25. | November 4, 2009    | 27,750.00  |

$ 541,400.00

(collectively the "Malley Four-Year Transfers").

66.     The Malley Four-Year Transfers were made with the Debtors' actual intent to hinder, delay or defraud the Debtors' creditors.

67.     The Malley Four-Year Transfers constituted fraudulent transfers within the meaning of, and in violation of, the Uniform Fraudulent Transfer Act, Conn. Gen. Stat. § 52-552e(a)(1).

68.     As a direct and proximate result of the Malley Four-Year Transfers, the Debtors, their estates and their creditors have been caused to suffer money damages.

18

69.   At all times relevant to the Malley Four-Year Transfers, there have been creditors who have held and still hold matured or unmatured unsecured claims against the Debtors that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

70.   The Trustee, on behalf of the Debtors' estates, is entitled to avoid the Malley Four-Year Transfers, to have them set aside and to recover the Malley Four-Year Transfers, or the value thereof, pursuant to 11 U.S.C. § 544 (b)(1), Conn. Gen. Stat. § 52-552e(a)(1), 52-552h(a), 550(a) and 551 from Malley and to an injunction against Malley and the Debtors prohibiting them from further transferring the property transferred or other property of the estate.

### Sixth Claim for Relief
**(UFTA Constructive Fraudulent Transfer Against Malley)**
**Conn. Gen. Stat. §§ 52-552e(a)(2), 52-552f(a) and 52-552h(a)**

71.   Paragraphs 1-70 of this Complaint are repeated and re-alleged as if fully set forth herein.

72.   The Debtors did not receive a reasonably equivalent value in exchange for the Malley Four-Year Transfers.

73.   The Malley Four-Year Transfers were effectuated when: (a) the Debtors were engaged, or were about to engage, in a business or transaction for which the remaining assets of the Debtors were unreasonably small in relation to the business or

**ZEISLER & ZEISLER, P.C.**  •  *ATTORNEYS AT LAW*
558 CLINTON AVENUE  •  P. O. BOX 3186  •  BRIDGEPORT, CONNECTICUT 06605-0186  •  (203) 368-4234  •  JURIS NO. 69625

transaction; and/or (b) the Debtors intended to incur, or believed or reasonably should have believed that they would incur debts beyond their ability to pay as they became due; and/or the Debtors were insolvent or the Debtors became insolvent as a result of the transfers.

74.     The Malley Four-Year Transfers constitute fraudulent transfers within the meaning of, and in violation of, the Uniform Fraudulent Transfer Act, Conn. Gen. Stat. §§ 52-552e(a)(2) and/or 52-552f(a).

75.     As a direct and proximate result of the Malley Four-Year Transfers, the Debtors, their estates and their creditors have been caused to suffer money damages.

76.     The Trustee, on behalf of the Debtors' estates, is entitled to avoid the Malley Four-Year Transfers, to have them set aside and to recover the Malley Four-Year Transfers, or the value thereof, pursuant to Conn. Gen. Stat. §§ 52-552e(a)(2), 52-552f(a) and 52-552h(a) from Malley and to an injunction against Malley prohibiting him from further transferring the property transferred or other property of the estate.

### Seventh Claim for Relief
### (Fraudulent Transfer Against Malley)
### Conn. Gen. Stat. § 52-552f(b) and 52-552h(a)

77.     Paragraphs 1-76 of this Complaint are repeated and re-alleged as if fully set forth herein.

ZEISLER & ZEISLER, P.C.  •  ATTORNEYS AT LAW
558 CLINTON AVENUE  •  P. O. BOX 3186  •  BRIDGEPORT, CONNECTICUT 06605-0186  •  (203) 368-4234  •  JURIS NO. 69625

78.    The Debtors made the following transfers to Malley within one year of the

Petition Date:

| | DATE | AMOUNT |
|---|---|---|
| 1. | December 2, 2008 | $   17,800.00 |
| 2. | December 23, 2008 | 12,100.00 |
| 3. | January 30, 2009 | 27,350.00 |
| 4. | April 2, 2009 | 10,000.00 |
| 5. | April 10, 2009 | 27,200.00 |
| 6. | May 19, 2009 | 50,000.00 |
| 7. | June 15, 2009 | 30,800.00 |
| 8. | June 26, 2009 | 6,000.00 |
| 9. | July 15, 2009 | 5,000.00 |
| 10. | August 4, 2009 | 26,500.00 |
| 11. | September 8, 2009 | 33,500.00 |
| 12. | September 28, 2009 | 33,450.00 |
| 13. | October 26, 2009 | 36,000.00 |
| 14. | November 4, 2009 | 27,750.00 |
| | | $  343,450.00 |

(collectively the "Malley One-Year Transfers").

79.    Malley was an insider of the Debtors as defined in Conn. Gen. Stat. § 52-552b(7).

80.    The Malley One-Year Transfers were made by the Debtors to Malley for an antecedent debt when the Debtors were insolvent and Malley had reasonable cause to believe that the Debtors were insolvent.

ZEISLER & ZEISLER, P.C.  •  ATTORNEYS AT LAW
558 CLINTON AVENUE  •  P. O. BOX 3186  •  BRIDGEPORT, CONNECTICUT 06605-0186  •  (203) 368-4234  •  JURIS NO. 69625

81.     The Malley One-Year Transfers constitute fraudulent transfers within the meaning of, and in violation of, the Uniform Fraudulent Transfer Act, Conn. Gen. Stat. §§ 52-552f(b).

82.     As a direct and proximate result of the Malley One-Year Transfers, the Debtors, their estates and their creditors have been caused to suffer money damages.

83.     Upon information and belief, some or all of the Malley One-Year Transfers were made for the benefit of Malley, who was the ultimate transferee of the Malley One-Year Transfers and/or the entity for whose benefit such transfers were made.

84.     The Trustee, on behalf of the Debtors' estates, is entitled to avoid the Malley One-Year Transfers, to have them set aside and to recover the Malley One-Year Transfers, or the value thereof, pursuant to Conn. Gen. Stat. § 52-552f(b) and 52-552h(a) from Malley and to an injunction against Malley prohibiting him from further transferring the property transferred or other property of the estate.

### Eighth Claim for Relief
**(UFTA Intentional Fraudulent Transfer Against Malley)**
**11 U.S.C. § 544(b)(1), Conn. Gen. Stat. § 52-552e(a)(1) and 52-552h(a)**

85.     Paragraphs 1-84 are repeated and re-alleged as if fully set forth herein.

86.     The Debtors made the following transfers to Malley:

| | DATE | AMOUNT |
|---|---|---|
| 1. | January 16, 2004 | $   8,640.00 |
| 2. | January 13, 2005 | 7,500.00 |
| 3. | April 18, 2005 | 7,500.00 |

**ZEISLER & ZEISLER, P.C.**   •   *ATTORNEYS AT LAW*
558 CLINTON AVENUE   •   P. O. BOX 3186   •   BRIDGEPORT, CONNECTICUT 06605-0186   •   (203) 368-4234   •   JURIS NO. 69625

| 4.  | July 18, 2005       | 7,500.00   |
|-----|---------------------|------------|
| 5.  | July 19, 2006       | 25,000.00  |
| 6.  | October 18, 2006    | 15,000.00  |
| 7.  | April 17, 2007      | 15,000.00  |
| 8.  | January 17, 2008    | 11,000.00  |
| 9.  | February 20, 2008   | 7,200.00   |
| 10. | April 9, 2008       | 7,000.00   |
| 11. | April 22, 2008      | 20,000.00  |
| 12. | July 23, 2008       | 2,750.00   |
| 13. | August 26, 2008     | 25,000.00  |
| 14. | September 15, 2008  | 20,000.00  |
| 15. | October 27, 2008    | 50,000.00  |
| 16. | December 2, 2008    | 17,800.00  |
| 17. | December 23, 2008   | 12,100.00  |
| 18. | January 30, 2009    | 27,350.00  |
| 19. | April 2, 2009       | 10,000.00  |
| 20. | April 10, 2009      | 27,200.00  |
| 21. | May 19, 2009        | 50,000.00  |
| 22. | June 15, 2009       | 30,800.00  |
| 23. | June 26, 2009       | 6,000.00   |
| 24. | July 15, 2009       | 5,000.00   |
| 25. | August 4, 2009      | 26,500.00  |
| 26. | September 8, 2009   | 33,500.00  |
| 27. | September 28, 2009  | 33,450.00  |
| 28. | October 26, 2009    | 36,000.00  |
| 29. | November 4, 2009    | 27,750.00  |

$ 572,540.00

(collectively the "Malley Transfers").

87.    Pursuant to Conn. Gen. Stat. § 52-552j, the Trustee has one year from when the fraudulent transfers could reasonably have been discovered in which to bring an action to recover these transfers, which one year has been extended pursuant to 11 U.S.C. § 108(a)(2) to two years after the Petition Date.

23

88.    These transfers were concealed by the Debtors as part of the Goldberg Scheme and were not disclosed or discoverable by the Debtors' creditors until November, 2009.

89.    The Malley Transfers were made by Debtors with the actual intent to hinder, delay, and defraud some or all of Debtors' then existing and future creditors.

90.    The Malley Transfers constituted internal fraudulent transfers within the meaning of, and in violation of, the Uniform Fraudulent Transfer Act, Conn. Gen. Stat. § 52-552e(a)(1).

91.    At all times relevant to the Malley Transfers, there have been creditors who have held and still hold matured or unmatured unsecured claims against the Debtors that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

92.    As a result of the foregoing, pursuant to 11 U.S.C. § 544(b)(1), Conn. Gen. Stat. § 52-552e(a)(1) and 52-552h(a), the Trustee is entitled to a judgment: (a) avoiding and preserving the Malley Transfers, (b) directing that the Malley Transfers be set aside, (c) recovering the Malley Transfers, or the value thereof, from Malley for the benefit of the Debtors' estates, and (d) an injunction against Malley prohibiting him from further disposing of the property transferred.

93.    As a direct and proximate result of the Malley Transfers, the Debtors, their estates and their creditors have been caused to suffer money damages.

**ZEISLER & ZEISLER, P.C.** • *ATTORNEYS AT LAW*
558 CLINTON AVENUE • P. O. BOX 3186 • BRIDGEPORT, CONNECTICUT 06605-0186 • (203) 368-4234 • JURIS NO. 69625

**Ninth Claim for Relief**
**(Claims Disallowance Against Malley)**
**Pursuant to 11 U.S.C. § 502(d)**

94.   Paragraphs 1-93 are repeated and re-alleged as if fully set forth herein.

95.   As set forth in Paragraphs 1-93 above, the defendants, Malley is the recipient of preferential transfers and fraudulent transfers which have not been returned to the Estate.

96.   Pursuant to 11 U.S.C. § 502(d) any claim which Malley may assert or has asserted must be disallowed until the preferential transfers and the fraudulently transferred amounts set forth in Paragraphs 1-93 have been returned in full to the Trustee.

25

**WHEREFORE**, the plaintiff, James Berman, Trustee, respectfully requests the Court enter judgment in favor of the Trustee and against the defendants as follows:

1.      On the First and Second Claims for Relief against defendants, Malley, pursuant to 11 U.S.C. §§ 547, 550(a), 550(c) and 551: (a) avoidance of the 90-Day Preferential Transfers and One-Year Preferential Transfers; (b) judgment directing that the 90-Day Preferential Transfers be set aside, and (c) recovery of the 90-Day Preferential Transfers, or the value thereof, from Malley for the benefit of the estates;

2.      On the Third Claim for Relief against defendants, Malley and the Debtors, pursuant to 11 U.S.C. §§ 548(a)(1)(A), 550(a) and 551: (a) avoidance of the Malley Two-Year Transfers; (b) judgment directing that the Malley Two-Year Transfers be set aside, and (c) recovery of the Malley Two-Year Transfers, or the value thereof, from Malley for the benefit of the estates;

3.      On the Fourth Claim for Relief against defendants, Malley, pursuant to 11 U.S.C. §§ 548(a)(1)(B), 550(a) and 551: (a) avoidance of the Malley Two-Year Transfers; (b) judgment directing that the Malley Two-Year Transfers be set aside, and (c) recovery of the Malley Two-Year Transfers, or the value thereof, from Malley for the benefit of the estates;

4.      On the Fifth Claim for Relief against defendants, Malley, pursuant to 11 U.S.C. § 544 (b)(1), Conn. Gen. Stat. § 52-552e(a)(1), 52-552h(a), 550(a) and 551: (a) avoidance of the Malley Four-Year Transfers; (b) judgment directing that the Malley Four-

26

Year Transfers be set aside, and (c) recovery of the Malley Four-Year Transfers, or the value thereof, from Malley for the benefit of the estates;

5.    On the Sixth Claim for Relief against defendants, Malley,  pursuant to Conn. Gen. Stat. §§ 52-552e(a)(2), 52-552f(a) and 52-552h(a): (a) avoidance of the Malley Four-Year Transfers; (b) a judgment directing that the Malley Four-Year Transfers be set aside, and (c) recovery of the Malley Four-Year Transfers, or the value thereof, from Malley for the benefit of the estates;

6.    On the Seventh Claim for Relief against defendants, Malley, pursuant to Conn. Gen. Stat. § 52-552f(b) and 52-552h(a): (a) avoidance of the Malley One-Year Transfers; (b) a judgment directing that the Malley One-Year Transfers be set aside, and (c) recovering the Malley One-Year Transfers, or the value thereof, from Malley for the benefit of the estates;

7.    On the Eighth Claim for Relief  against defendants, Malley, pursuant to 11 U.S.C. § 544(b)(1), Conn. Gen. Stat. § 52-552e(a)(1) and 52-552h(a): (a) avoidance of the Malley Transfers; (b) a judgment directing that the Malley Transfers be set aside, and (c) recovery of the Malley Transfers, or the value thereof, from Malley for the benefit of the estates;

8.    On the Ninth Claim for Relief against defendants, Malley, disallowance of any claim asserted by Malley pursuant to 11 U.S.C. § 502(d) .

**ZEISLER & ZEISLER, P.C.**  •  *ATTORNEYS AT LAW*
558 CLINTON AVENUE  •  P. O. BOX 3186  •  BRIDGEPORT, CONNECTICUT 06605-0186  •  (203) 368-4234  •  JURIS NO. 69625

9.      On all counts, a permanent injunction against all defendants from transferring or disposing any assets during the pendency of this bankruptcy case;

10.     Attorneys fees;

11.     Pre-judgment interest and costs; and

12.     Such other and further relief as this Court deems just and proper.

Dated at Bridgeport, Connecticut this 23rd day of July, 2010.

> JAMES BERMAN, CHAPTER 7 TRUSTEE
> FOR THE ESTATES OF
> MICHAEL S. GOLDBERG AND
> MICHAEL S. GOLDBERG, LLC
>
> By_____
> Jeffrey Hellman (ct04102)
> ZEISLER & ZEISLER, P.C.
> 558 Clinton Avenue
> Bridgeport, Connecticut 06605
> (203) 368-4234
> (203) 367-9678 (fax)
> jhellman@zeislaw.com

28